IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHANE HARMON,

                Plaintiff,

v.

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

                Defendant.

CV. 06-1050 KI

OPINION AND ORDER

KING, Judge:

### INTRODUCTION

Plaintiff Shane Harmon ("Harmon"), brings this action pursuant to the Social Security Act, 42 USC § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. He is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d)(1) and 20 USC section 405(g).

Page 1 - OPINION AND ORDER

Benefits, a period of disability, and Supplement Security Income ("SSI") disability benefits under Titles II and XVI of the Social Security Act.  For the reasons set forth below, the decision of the Commissioner is affirmed.

## PROCEDURAL BACKGROUND

Harmon filed an application for benefits on February 20, 2003, alleging disability since July 1998, July 1, 2001, and July 1, 2002, due to schizophrenia, bipolar disorders, and depression..  His  application was denied initially and upon reconsideration.  On May 26, 2005, a hearing was held before an Administrative Law Judge ("ALJ").   In a decision dated June 7, 2005, the ALJ found Harmon was not entitled to benefits.  The Appeal's Council denied Harmon's request for review, making the ALJ's decision the final decision of the Commissioner.  Harmon now seeks judicial review of the Commissioner's decision.

## STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 USC § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert. denied*, 517 US 1122 (1996).  The Commissioner bears the burden of developing the record.  *DeLorme v. Sullivan*, 924 F2d 841, 849 (9th Cir 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995).  "Substantial

Page 2  - OPINION AND ORDER

evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F3d at 1039-40.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999):

Step One. The Commissioner determines whether claimant is engaged in substantial gainful activity. If so, claimant is not disabled. If claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate claimant's case under step two. 20 CFR §§ 404.1520(b), 416.920(b).

Step Two. The Commissioner determines whether claimant has one or more severe impairments. If not, claimant is not disabled. If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under step three. 20 CFR §§ 404.1520(c), 416.920(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration ("SSA") regulations, 20 CFR Part 404,

Subpart P, Appendix 1. If so, claimant is disabled. If claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of claimant's case proceeds under step four. 20 CFR §§ 404.1520(d), 416.920(d).

Step Four. The Commissioner determines whether claimant is able to perform work he or she has done in the past. If so, claimant is not disabled. If claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of claimant's case proceeds under step five. 20 CFR §§ 404.1520(e), 416.920(e).

Step Five. The Commissioner determines whether claimant is able to do any other work. If not, claimant is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show a significant number of jobs exist in the national economy that claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates a significant number of jobs exist in the national economy that claimant can do, claimant is not disabled. If the Commissioner does not meet this burden, claimant is disabled. 20 CFR §§ 404.1520(f)(1), 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant. *Tackett*, 180 F3d at 1098. At step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id*

## ALJ's DECISION

At step one, the ALJ found Harmon had not engaged in substantial gainful activity since the alleged onset of disability. This finding is not in dispute.

At step two, the ALJ found Harmon had the medically determinable severe impairments of major depressive disorder, bipolar II disorder, schizoaffective disorder, hepatitis C and a history of alcohol and substance abuse. This finding is not in dispute.

At step three, the ALJ found that Harmon's impairments did not meet or medically equal a listed impairment. This finding is not in dispute.

The ALJ determined that Harmon had no physical limitations and retained the mental residual functional capacity ("RFC") to understand directions and to remember and carry out simple repetitive routine tasks. This finding is in dispute.

At step four, the ALJ determined that Harmon was able to perform his past relevant work as a general laborer, deli clerk, warehouse worker, janitor, iron worker, and pruner. As a result, the ALJ found Harmon not disabled within the meaning of the Act. This finding is in dispute.

## FACTUAL BACKGROUND

Harmon was born in 1968, and was 30 years old at the time of the first alleged onset of disability. He completed a high school equivalency degree. Tr. 376.[2]

The medical records in this case accurately set out Harmon's medical history as it relates to his claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

/ / /

/ / /

---

[2] Citations are to the page(s) indicated in the official transcript of the record filed with the Commissioner's Answer.

Page 5  - OPINION AND ORDER

## DISCUSSION

Harmon contends that the ALJ erred by: (1) failing adequately to develop the record; (2) finding him not fully credible; and (3) failing to give appropriate weight to his GAF scores.

I. Development of the Record

Harmon argues that the ALJ's RFC assessment was deficient because he failed to address the functional limitations arising from hepatitis C, bipolar disorder, and schizoaffective disorder. Harmon contends that the ALJ failed adequately to develop the record on these issues.

An ALJ's duty to develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari* 276 F3d 453, 459-60 (9th Cir 2001)(citing *Tonapetyan v. Halter,* 242 F3d 1144, 1150 (9th Cir 2001)).

    A. Physical Limitations from Hepatitis C

The ALJ determined that hepatitis C was a severe impairment. However, Harmon fails to identify any physical or mental limitation arising from hepatitis C. After careful scrutiny of the entire medical record, this court has found no evidence that Harmon complained of any limitations arising from hepatitis C or that any medical provider observed any limitations relating to the condition.

In November 2001, Harmon reported that he had no current medical issues, and that despite a hepatitis diagnosis, his health was generally good. Tr. 244.

In a January 2002 psychiatric evaluation, Cynthia Romero, M.D., noted a history of pancreatitis and hepatitis C. Tr. 238. Dr. Romero advised Harmon that it was dangerous to continue to drink alcohol considering his history. Tr. 236.

Page 6 - OPINION AND ORDER

Records from Comprehensive Options for Drug Abusers ("CODA") indicate that Harmon reported in August 2002 that he had hepatitis B, not C.  Tr. 213.  Treatment notes indicate that Harmon was in danger of causing serious damage to his physical health if he continued to abuse alcohol.  Tr. 214.

Harmon did not testify to any limitations arising from hepatitis C.  Tr. 373-94.  The ALJ found that Harmon had no significant physical functional limitations.  Tr. 30.  A non-severe impairment is one that "does not significantly limit your physical or mental ability to do basic work activities."  20 CFR §§ 404.1521(a), 416.921(a).  Examples of "basic work activities" include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying and handling.  *See,* 20 CFR §§ 404.1521(b), 416.921(b).  Harmon has not alleged any difficulty in performing any of these activities.

The record is neither ambiguous nor inadequate as to the limitations arising from Harmon's hepatitis C.  Accordingly, the ALJ had no duty to further develop the medical record on this issue.

B.  Limitations Arising From Mental Disorders

Harmon argues that the ALJ failed to develop the medical record adequately with respect to mental limitations arising from bipolar II and schizoaffective disorders.  Harmon fails to articulate what those limitations are, or where they are documented in the medical record.  Harmon argues that the ALJ relied upon the reviewing DDS physicians, Drs. Lahman and Hennings, who determined his limitations based solely on depression, and without regard to limitations arising from bipolar II disorder and schizoaffective disorder.  The ALJ did give the

reviewing psychologists' opinions "significant weight," but noted that they are "consistent with the evidence of record." Tr. 29-30.

Frank Lahman, Ph.D, reviewed Harmon's medical record in July 2003. Tr. 301-320. His opinion was affirmed by Bill Hennings, Ph.D. Dr. Lahman summarized the records, noting the February 2003 report by Laura Perri, M.D., in which Dr. Perri recorded Harmon's description of auditory and visual hallucinations, but found that Harmon's memory was intact for recent and remote events, his intelligence appeared to be above-average, and his insight was fair. Tr. 315. Dr. Lahman summarized the descriptions of activities of daily living submitted by Harmon and third parties, and noted the inconsistencies in those reports. *Id.* Dr. Lahman concluded that Harmon was capable of understanding and remembering short and simple instructions, except when under the influence of alcohol or drugs, that he can carry out short and simple instructions, and that he is capable of working with the public, except when under the influence of alcohol or drugs. Tr. 316. It is clear from his opinion that Dr. Lahman did consider the diagnoses of bipolar disorder and schizoaffective disorder in determining Harmon's limitations.

The record is neither ambiguous nor inadequate with respect to the limitations arising from Harmon's mental impairments. Accordingly, the ALJ had no duty to further develop the medical record on this issue.

II. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F3d 1035, 1039 (9th Cir 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F3d 715, 722 (9th Cir 1998). Unless there is affirmative evidence showing that the claimant

is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F3d at 724. *See also Holohan v. Massinari,* 246 F3d 1195, 1208 (9th Cir 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722. *See also Holohan,* 246 F3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F3d 947, 958 (9th Cir 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." [Footnote omitted.] *Smolen v. Chater,* 80 F3d 1273, 1281 (9th Cir 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423 (d)(5)(A) (1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (l) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom.

*Smolen,* 80 F3d at 1282.

Harman testified that he could not approximate the year that he received his GED because of memory loss. Tr. 376. He stated that he had been unable to work because "Well, I have a

Page 9  - OPINION AND ORDER

hard time being in public. I just don't feel comfortable." Tr. 377. Asked how that prevents him from working, Harmon said "I'm not sure how it works. I just know that, you know–I just–I can't be out in public. It's really hard on me. It works on me and I just –I don't know." *Id.* Asked whether he could do a job away from the public, Harmon replied "I've tried to work around the yard at my parent's house and that doesn't seem to work either. I just –I don't know. I just–I can't seem to get going." *Id.* Harmon testified that he could not explain what kept him from being able to work, and that he has problems making decisions. He wears the same clothes for three or four days in a row. He cares for his two children, but "That's about all I can do. I just know that I have to and I just–I don't know." Tr. 377-78. Harmon does the laundry, prepares meals, cleans the home, and does the shopping. Tr. 378-79. He completes tasks one piece at a time. Tr. 389. Harmon testified that he has three or four beers "every couple of days." Tr. 380.

Harmon hears voices. "It's kind of like I'm in a room where there's a balcony above me and there's like many people on this balcony. They look down upon me and they can see inside my thoughts and my mind and they talk about me." Tr. 382. Sometimes Harmon feels like he can read other people's thoughts. He talks to the voices in his head about "different things, daily routine. I feel like they judge me and I get mad and tell them not to judge me." Tr. 383. Harmon testified that he hears the voices constantly and "pretty much" every day. *Id.* He stated that he sleeps "maybe two hours" and that he wakes up at night "constantly" because of the voices.

The ALJ found Harmon "generally not credible." Tr. 28. The ALJ stated that the medical evidence did not support Harmon's allegation that he is unable to perform basic work activities due to limitations arising from his severe impairments. *Id.*

He testified he also tried working in his parents' yard; however,

he said he could not do it, but testified he cannot explain as to why he was unable to work. The claimant's allegations as to the intensity, persistence and limiting effects of these symptoms are disproportionate and not supported by the medical evidence. In addition, the claimant's current daily activities are inconsistent with his alleged level of limitations. He does the grocery shopping, cleans the house, takes care of his sons (8 years old and 11 years old), including feeding, doing their laundry and playing board games. In addition, there are numerous medical records which document the claimant's alcohol abuse. The claimant has had a number of times where he has been off alcohol and his functioning improved. Also, the claimant's medications seem to make a significant difference in his functioning [citation omitted].

The written statement of claimant's mother also indicates the claimant reads novels authored by Tom Clancy and Stephen King [citation omitted], but he testified at the hearing he is no longer able to read such novels because he has problems with his memory. To the contrary, examining physician, Laura Perri, M.D., reported on February 27, 2003, the claimant's memory was intact for recent and remote events, intelligence appears to be above-average and insight is fair [citation omitted]. It is further noted the symptoms and limitations which the claimant has provided throughout the record have generally been unpersuasive and inconsistent, I cannot find Mr. Harmon's allegations concerning his inability to work to be sufficiently credible to serve as additional evidence to support a finding of disability.

Tr. 29.

Harmon argues that the ALJ's credibility finding is not sufficiently specific. However, the ALJ specifically found that Harmon's testimony that he is unable to work not credible. The ALJ noted that Harmon's assertion was inconsistent with the medical evidence and his activities of daily living, and that his assertion of memory loss was contradicted by both objective medical evidence and third party testimony. Finally, the ALJ properly noted that the medical record contains abundant evidence of medical noncompliance, specifically Harmon's continued consumption of alcohol. In addition, Dr. Romero reported in January 2002 that Harmon had

Page 11 - OPINION AND ORDER

failed to refill a prescription for Risperdal, and that when he was taking it he was sleeping better and not hearing voices. Tr. 236. The ALJ's credibility determination is supported by clear and convincing reasons, based on substantial evidence, and free of legal error.

III. <u>GAF Scores As Evidence of Disability</u>

Harmon argues that the AJL failed to consider his GAF scores, ranging from 35 to 48, as evidence of a disabling mental impairment. However, the GAF assessment is based either on the individual's symptoms or her functional impairments. GAF scores between 41 and 50 indicate ""Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000).

Moreover, the January 2002 assessment of a GAF score of 45 was based in part on the facts that Harmon was unemployed and had legal problems arising from an arrest for driving under the influence and an altercation with his wife "on November 25 [2001] when the phone was accidentally pulled off the wall while his wife was calling 911." Tr. 237.

The GAF score of 44 was assessed on November 26, 2001. Tr. 242.

In February 2003 Dr. Perri assessed a GAF score of 40, and noted that Harmon had been released from jail "two weeks ago where he had been placed on a probation violation. He has had multiple charges for stealing, DUII's, resisting arrest and writing bad checks. His probation is for a DUII currently. He was put in jail due to drinking." Tr. 276. In addition, Dr. Perri noted that Harmon reported drinking two beers that day, was unemployed, separated from his wife, and receiving inadequate mental health care. Tr. 277.

Page 12 - OPINION AND ORDER

An August 2004 GAF of 35 was assessed in part because Harmon had lost health insurance and was no longer taking Seroquel. Tr. 353. Harmon reported that Seroquel had "worked quite nicely in the past to stabilize his sleep and radically decrease his auditory hallucinations." Tr. 352.

All of the GAF scores were based at least in part on Harmon's symptom reports, and the ALJ properly found him not fully credible. A GAF score of less than 50 does not, by itself, establish disability within the definition of the Social Security Act.

## **CONCLUSION**

For these reasons, the court affirms the decision of the Commissioner and this case is dismissed.

IT IS SO ORDERED.

Dated this ____16th_____ day of May, 2007.


    /s/ Garr M. King_____
GARR M. KING
United States District Judge